UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTON PURISIMA, | 1:17-cv-05312-NLH-AMD |
| Plaintiff, | |
| v. | **OPINION** |
| NEW JERSEY TRANSIT POLICE DEPARTMENT, GREYHOUND BUS LINES CORPORATION, ATLANTIC CITY BUS TERMINAL, and DOES 1-1000, | |
| Defendants. | |

**APPEARANCES:**

ANTON PURISIMA
390 9TH AVENUE
NEW YORK, NY 10001

    *Appearing pro se*

SHARON PRICE-CATES
STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW & PUBLIC SAFETY
25 MARKET STREET
P.O. BOX 114
TRENTON, NJ 08625

    *On behalf of New Jersey Transit Corporation (improperly pleaded as "New Jersey Transit Police Department")*

JUSTIN A. BAYER
KANE PUGH KNOELL TROY & KRAMER, LLP
510 SWEDE STREET
NORRISTOWN, PA 19401-4886

    *On behalf of Greyhound Bus Lines Corporation*

**HILLMAN**, District Judge

Plaintiff, Anton Purisima, appearing *pro se*, filed a complaint against Defendants, New Jersey Transit Corporation (improperly pleaded as "New Jersey Transit Police Department"), Greyhound Bus Lines, the Atlantic City Bus Terminal, which is owned by New Jersey Transit, and Does 1-1000.[1]  Plaintiff claims that at 2:00 a.m. on July 5, 2017, he was seated on a bench at the Atlantic City bus terminal when three New Jersey Transit police officers approached him.  Plaintiff claims that he held a Greyhound bus ticket to New York City that was valid for use until August 29, 2017, as well as several valid New Jersey Transit bus tickets.

Plaintiff further claims that the New Jersey Transit police officers informed him of a two-hour limit on sitting in the bus terminal, and asked the clerk at the Greyhound desk when the next bus to New York City departed.  Plaintiff claims that the clerk responded that there was a 4:30 a.m. bus, and one of the officers wrote "4:30 A.M." on Plaintiff's Greyhound ticket.  Plaintiff claims that despite having a valid bus ticket, he was told to leave the bus terminal or face a trespassing charge.

Based on this incident as pled in the Complaint, Plaintiff

---

[1] This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

2

alleges that Defendants' violated his rights under various federal and state laws, including 42 U.S.C. § 2000a (Prohibition against discrimination or segregation in places of public accommodation).[2] Plaintiff claims that the bus terminal is a place of public accommodation, and that being ordered to either leave the bus terminal or travel on the next bus was in violation of his right to access a place of public accommodation. Plaintiff further claims that Defendants' actions were motivated by his race (Filipino), disability ("taking medications"), and age ("senior citizen").

Defendants have moved to dismiss Plaintiff's complaint in its entirety. New Jersey Transit has moved to dismiss Plaintiff's complaint for lack of standing and for failure to

---

[2] Section 2000a-3(a) provides a private right of action. 42 U.S.C. § 2000a-3 ("Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a-2 of this title, a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved . . . ."). Section 2000a-2 prohibits any person from "withhold[ing], deny[ing], or attempt[ing] to withhold or deny, or deprive or attempt to deprive any person of any right or privilege secured by section 2000a or 2000a-1 of this title." 42 U.S.C. § 2000a-2. Section 2000a provides, in part, that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation." 42 U.S.C. § 2000a(a). Section 2000a-1 provides, in part, that "[a]ll persons shall be entitled to be free, at any establishment or place, from discrimination." 42 U.S.C. § 2000a-1.

state a claim.  Greyhound has moved to dismiss Plaintiff's complaint for failure to state a claim.  Plaintiff has opposed Defendants' motions by filing several motions of his own, all of which this Court has reviewed.[3]

*Pro se* complaints must be construed liberally, and all reasonable latitude must be afforded the *pro se* litigant. Haines v. Kerner, 404 U.S. 519, 520 (1972), reh'g denied, 405 U.S. 948 (1972).  Even though *pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Estelle v. Gamble, 429 U.S. 97, 107 (1976), *pro se* litigants "must still plead the essential elements of [their] claim and [are] not excused from conforming to the standard rules of civil procedure," McNeil v. United States, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); Sykes v. Blockbuster Video, 205 F. App'x 961, 963 (3d Cir. 2006) (finding that *pro se* plaintiffs are expected to comply with the Federal Rules of Civil Procedure).

---

[3] MOTION for More Definite Statement [29]; MOTION to Strike [30]; MOTION for Joining Motions [31]; MOTION to Strike [35]; MOTION for More Definite Statement [36].  In light of the decision to dismiss Plaintiff's Complaint for lack of standing, Plaintiff's various motion will be denied as moot.

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. Malleus v.

5

George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).

A motion to dismiss for lack of standing is governed by Fed. R. Civ. P. 12(b)(1).  The standard for reviewing a complaint on its face - a facial attack - under Rule 12(b)(1) essentially applies the same standard under Rule 12(b)(6).  See In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012) (citation omitted) (explaining that standing is a jurisdictional matter which should not be confused with requirements necessary to state a cause of action, but in reviewing a facial challenge, which contests the sufficiency of the pleadings, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff").

The Court finds that Plaintiff has failed to state any cognizable claims against Defendants because he has failed to satisfy the threshold requirement that he has standing to bring his claims.  To establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  As "[t]he party invoking federal jurisdiction," a

6

plaintiff "bears the burden of establishing these elements." Mielo v. Steak 'n Shake Operations, Inc., 897 F.3d 467, 478 (3d Cir. 2018) (quoting Spokeo, Inc. v. Robins, --- U.S. ----, 136 S. Ct. 1540, 1547 (2016); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

"The primary element of standing is injury in fact, and it is actually a conglomerate of three components.  To establish an injury in fact, a plaintiff must first show that he or she suffered an invasion of a legally protected interest.  Second, a plaintiff must show that the injury is both concrete and particularized.  Third, a plaintiff must also show that his or her injury is actual or imminent, not conjectural or hypothetical."  Id. (citations and quotations omitted).

Plaintiff's complaint here fails to articulate what injury he actually suffered as a result of his interaction. Plaintiff's complaint simply does not relate what happened after he was confronted by the New Jersey Transit police.  Did Plaintiff leave the bus terminal?  Did Plaintiff take the 4:30 a.m. bus?  Was Plaintiff cited for trespassing?  Absent such allegations, the Court and the Defendants are unable to discern what concrete and particularized injury Plaintiff has allegedly suffered.

Rather than allege a personal harm, Plaintiff's complaint fairly read, is a generalized attack on the challenged policy.

7

More precisely, Plaintiff appears to challenge New Jersey Transit's 2-hour limit on time waiting in the bus terminal, a limit that applies even when a person holds a valid bus ticket. Plaintiff's disagreement with the policy and its application to him is not enough, however, to state a "concrete" and "particularized" injury. The "mere existence . . . of [a] particular corporate polic[y]" is insufficient, and "[b]are procedural or technical violations of a statute alone will not satisfy the concreteness requirement." Id. (citation omitted).

For example, in Mielo v. Steak 'n Shake Operations, Inc., the plaintiffs, who are disabled, alleged that the defendant restaurant, as a place of public accommodation, failed to correct barriers to a disabled person's access, and failed to have a corporate policy to ensure such access. The Third Circuit found that the plaintiffs had standing to assert their injuries regarding their inability to access the restaurant because they "sufficiently alleged a concrete harm in the form of experiencing actual physical difficulty in ambulating through parking facilities which are allegedly not ADA-compliant," and that they alleged "they *personally* experienced these concrete injuries." Mielo, 897 F.3d at 479 (emphasis in the original).

The Third Circuit further found, however, that the plaintiffs did not "have standing to seek remedies corresponding to mere procedural violations of the ADA." Id. The Third

8

Circuit explained, "[E]ven assuming that Steak 'n Shake violated the ADA by failing to have an adequate ADA compliance policy in place, the mere nonexistence of such a policy would not afford Plaintiffs a basis to establish standing.  In other words, Plaintiffs would still need to show how the lack of a policy resulted in a concrete harm that was particular to them.  Because Plaintiffs do not allege how the mere nonexistence of a particular corporate policy constitutes a concrete harm in and of itself, they cannot rely on the want of such a policy as a basis for standing."  Id.

Similarly in this case, Plaintiff appears to allege that the 2-hour limit to waiting in the bus terminal inhibits access to the bus terminal, and such access presumably should extend for any amount of time that a person holds a valid ticket.  Here, Plaintiff's Greyhound bus ticket was valid for travel from July 3, 2017 through August 29, 2017, and it appears that Plaintiff alleges he should not have been denied access for that entire time.  But again, and like the plaintiffs in Mielo, Plaintiff has failed to allege how he was injured by the policy.  The existence of the 2-hour waiting limit at the bus terminal without any articulation of how the 2-hour waiting limit actually harmed him cannot support a viable claim for lack of access to a place of public accommodation.  See Mielo, 897 F.3d at 479 (explaining that the second component of injury in fact

9

requires that an alleged injury be both "concrete" and "particularized," and alleging "only a harm in the mere existence or absence of" a particular policy is not enough to confer standing); see also Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016) ("For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"); id. ("Particularization is necessary to establish injury in fact, but it is not sufficient.  An injury in fact must also be 'concrete.'  A 'concrete' injury must be 'de facto'; that is, it must actually exist."); Healy v. Attorney General Pennsylvania, 563 F. App'x 139, 142 (3d Cir. 2014) (finding that the plaintiffs lacked standing to challenge a rule of professional ethics because they failed to allege how that rule harmed them in any particularized or concrete way); Pennsylvania Prison Soc. v. Cortes, 508 F.3d 156, 165 (3d Cir. 2007) (finding that the prisoner plaintiffs lacked standing to bring their claims that a state constitutional amendment regarding parole was unconstitutional because they failed to allege any evidence that they had any actual injury as a result of that amendment); Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 122 (3d Cir. 1997) ("When a plaintiff claims that a defendant's threatened injury is the source of his standing, he must show that the threatened injury is so imminent as to be 'certainly impending.' The imminence

10

requirement ensures that courts do not entertain suits based on speculative or hypothetical harms."). In short, in order to maintain his claims against New Jersey Transit regarding the 2-hour waiting limit at the bus terminal, Plaintiff must state in his complaint how it actually harmed him.

Moreover, to the extent that Plaintiff alleges that the 2-hour limit was discriminatorily applied to him because of his race, age, or disability, and it is not applied to others who are not a minority, elderly, or disabled, Plaintiff has failed to allege any facts to support such an allegation, which is also fatal to that claim. "The plaintiff in a disparate treatment case must prove as an integral part of his or her case not only the existence of disparate treatment but also that such treatment was caused by purposeful or intentional discrimination." Smithers v. Bailar, 629 F.2d 892, 898 (3d Cir. 1980), cited by Liggon-Redding v. Virtua Voorhees, 2014 WL 3870298, at *4 (D.N.J. 2014) (where a plaintiff claimed she was discriminated against at a place of public accommodation - a hospital - because of her race, finding that the plaintiff "has not identified any statement, action, or circumstance where Plaintiff was treated differently because of h[er] protected status. Plaintiff has also not established any causal link between Plaintiff's alleged discriminatory treatment and Plaintiff's race, national origin or religion") (other citation

11

omitted).

Finally, in addition to Plaintiff's failure to allege any injuries arising from the July 5, 2017 incident, Plaintiff's claims against Greyhound fail for an additional reason - Plaintiff's failure to plead any facts as to how Greyhound discriminated against him or otherwise violated Plaintiff's rights under federal and state law.  Plaintiff's only allegation against Greyhound is that the clerk answered the New Jersey Transit police officer's question about when the next bus left for New York City.  This sole alleged fact does not satisfy the Twombly/Iqbal and Rule 8 pleading requirements to maintain any claims against Greyhound.

Consequently, Plaintiff's complaint must be dismissed in its entirety.[4]  Third Circuit case law, however, "supports the notion that in civil rights cases district courts must offer amendment--irrespective of whether it is requested--when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."  Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).

Because at this time it does not appear to the Court that

---

[4] In light of this disposition, the Court need not address the other arguments raised by Defendants as to why the Complaint fails to state cognizable claims. If Plaintiff is able to establish standing in any amended pleading, Defendants may renew those arguments by motion.

it would be inequitable or futile, the Court will provide Plaintiff with 30 days to file an amended complaint to address the deficiencies identified by the Court, if he is able to do so.

    An appropriate Order will be entered.


Date: April 23, 2020          s/ Noel L. Hillman
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.